[Cite as *State v. Lenhart*, 2022-Ohio-125.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110226 |
| v. | : | |
| CHRISTOPHER LENHART, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 20, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-97-356977-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Christopher Lenhart, *pro se.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Christopher Lenhart ("Lenhart"), pro se, appeals the denial of his postconviction application for DNA testing. He claims the following five errors:

1.  The trial court erred in ruling that testing would not be outcome determinative because testing would establish that someone else committed the crime for which [defendant-]appellant was convicted.

2.  The trial court erred when it failed to grant testing because the trial court allowed scientific evidence that was contrary to Evid.R. 702 which denied defendant[-appellant] a fair trial.

3.  Defendant[-appellant] was denied his right to a fair trial because of the admission of false evidence in violation of USCA 6.

4.  Trial counsel was ineffective for failing to investigate and preserve the biological material which denied defendant a fair trial.  USCA VI.

5.  Defendant was denied due process and equal protections of the laws because the trial court failed to comply with the principals [sic] and purposes of felony sentencing.  R.C. 2929.11-2929.12.

{¶ 2} After careful review of the record and applicable law, we affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 3} Lenhart was convicted of rape and felonious assault following a jury trial in February 1998.  His convictions were affirmed on appeal.  *State v. Lenhart*, 8th Dist. Cuyahoga No. 74332, 1999 Ohio App. LEXIS 3379 (July 22, 1999) ("*Lenhart I*").  The evidence at trial showed that in the early morning hours of June 30, 1997, a truck occupied by C.S. and her boyfriend stalled.  Lenhart and his companion, Dennis Dranse ("Dranse"), who happened to be at the scene, offered to obtain jumper cables to jump start their stalled vehicle.

{¶ 4} C.S. got into Dranse's car for the purpose of obtaining the jumper cables.  However, instead of getting jumper cables they drove to a home near a field.  At Lenhart's direction, C.S. walked into the field where Lenhart repeatedly hit her in

the face and forced her to perform oral sex on him.  Lenhart also attempted to vaginally rape her.

{¶ 5} At some point during the assault, Dranse walked into the field and saw what was happening.  Having finished the assault, Lenhart told C.S. that she was now going to "please" Dranse.  Dranse, however, refused, and no sexual contact occurred between them.  Thereafter, Lenhart ripped off all of C.S.'s clothes and scattered them all over the field, leaving her naked and bleeding.  As he was leaving, Lenhart kicked C.S. in the ribs.  C.S. believed she "blacked out" for a period of time, but eventually found her way back to her boyfriend and the disabled truck.

{¶ 6} Police met C.S. at Fairview General Hospital where a rape kit was collected.  Police also retrieved C.S.'s clothes from the field.  X-rays taken at the hospital revealed that C.S. suffered a broken rib.  C.S. also suffered lacerations on her face that were large enough to require stiches.  C.S. subsequently identified Lenhart from a photo array of five white males.  She also picked the picture of Dranse and identified him as the driver.

{¶ 7} Lenhart testified on his own behalf and asserted that C.S. agreed to have sex with him in exchange for drugs.  He admitted that he took C.S. into the field and started to have sex with her, but lost interest because "she did not attract me." *Lenhart I*, 8th Dist. Cuyahoga No. 74332, 1999 Ohio App. LEXIS 3379 at 10. Lenhart explained that because he lost interest in sex, he wanted C.S. to pay him for the drugs.  When she did not have any money, he hit her several times and she fell down.  Lenhart claimed that it was Dranse who kicked her in the ribs.  However, he

had no explanation for why C.S.'s clothes had been torn to pieces. Lenhart maintained that he had previously sold drugs to C.S. in the past.

{¶ 8} As previously stated, the jury found Lenhart guilty of rape and felonious assault. The court sentenced him to seven years on the rape conviction and five years on the felonious assault conviction, to be served concurrently. The court also classified him as a sexually oriented offender under Megan's Law. Lenhart's convictions were affirmed on appeal. *See Lenhart I.*

{¶ 9} In January 2019, after Lenhart had served his sentence, he filed a pro se motion for DNA testing and requested an evidentiary hearing. The motion was summarily denied. Thereafter, in May 2020, Lenhart filed another pro se application for DNA testing, which was denied without a hearing. This time, Lenhart appealed. This court concluded that the court's judgment entry was not a final, appealable order and remanded the case to the trial court to issue statutorily mandated findings.

{¶ 10} The trial court issued the mandatory findings of fact and conclusions of law. In its judgment entry, the trial court concluded that Lenhart was ineligible for DNA testing because he had already finished serving his sentence. The court also observed that Lenhart failed to submit his application on the form prescribed by the attorney general and that the docket was devoid of any certification or evidence that Lenhart served his application on the attorney general as required by statute. Finally, the court concluded that even if Lenhart were deemed eligible to submit the application, a DNA test would not be outcome determinative because Lenhart's

convictions were based upon the testimony of the victim, who positively identified him as the perpetrator, as well as his own admissions.

{¶ 11} Now that the trial court has issued a final, appealable order, Lenhart's appeal is ripe for review.

## II. Law and Analysis

### A. Outcome Determinative

{¶ 12} In the first assignment of error, Lenhart argues the trial court erred in denying his request for DNA testing on grounds that it would not be outcome determinative.

{¶ 13} We review the trial court's decision to accept or reject an eligible offender's application for DNA testing for an abuse of discretion. *State v. Richard*, 8th Dist. Cuyahoga No. 99449, 2013-Ohio-3918, ¶ 5, citing *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654, ¶ 12 (8th Dist.). A trial court abuses its discretion where its decision is clearly erroneous and based on either a disregard for the law or a misapplication of the law to undisputed facts. *Ohio Civ. Rights Comm. v. Case W. Res. Univ.*, 76 Ohio St.3d 168, 666 N.E.2d 1376 (1996), citing *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 383 N.E.2d 564 (1978).

{¶ 14} R.C. 2953.71 et seq. establishes a statutory scheme that allows eligible offenders to petition their respective trial courts to order DNA testing. Pursuant to R.C. 2953.74, the trial court may "accept" an eligible offender's application for DNA testing only if certain factors are present, including a finding that "if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be

outcome determinative." *Ayers* at ¶ 28, citing R.C. 2953.74(B) and (C); and *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 15 (2d Dist.).

**{¶ 15}** The results of DNA testing would be "outcome determinative" if, "in the context of and upon consideration of all available evidence related to the offender's case * * * there is a strong probability that no reasonable factfinder would have found the offender guilty" of the offense. R.C. 2953.71(L)(defining the term "outcome determinative").

**{¶ 16}** Lenhart argues DNA testing in his case would be outcome determinative because the state presented an expert at trial, who testified that he compared a pubic hair taken from the rape kit and found that it was "similar" to Lenhart's pubic hair. However, he does not explain how the requested DNA test results would change the outcome, and Lenhart admitted at trial that he engaged in sexual conduct with C.S., but claimed it was consensual because C.S. agreed to have sex in exchange for drugs. Moreover, C.S. testified that Lenhart raped her against her will, repeatedly punched her in the face, and kicked her in the ribs, which resulted in a rib fracture. C.S.'s testimony was corroborated by the fact that police found her clothes, which had been torn to pieces and strewn all over the field where C.S. stated that the assault occurred. Lenhart was unable to provide a reasonable explanation for the scattered clothes. The jury apparently believed C.S.'s testimony because they found Lenhart guilty of rape. Consequently, even if DNA testing were conducted and another contributor of the pubic hair were identified, it would not

exonerate Lenhart. Therefore, the trial court properly concluded that DNA testing would not be outcome determinative.

{¶ 17} The first assignment of error is overruled.

## B. Remaining Assigned Errors

{¶ 18} In the second and third assignments of error, Lenhart argues the trial court should have allowed DNA testing because it erroneously allowed the state's expert to provide testimony in contravention of applicable evidentiary rules. In the fourth assignment of error, he argues his trial counsel was ineffective for failing to investigate and preserve biological material, which resulted in a violation of due process. In the fifth assignment of error, Lenhart argues his sentence was contrary to law because the trial court failed to comply with the purposes and principles of felony sentencing set forth in R.C. 2929.11 and 2929.12. All of these arguments are barred by res judicata.

{¶ 19} The doctrine of res judicata bars claims that were raised or could have been raised on direct appeal. *State v. Fountain*, 8th Dist. Cuyahoga Nos. 92772 and 92874, 2010-Ohio-1202, ¶ 9, citing *State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221. "Issues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record." *State v. Robinson*, 8th Dist. Cuyahoga No. 110278, 2021-Ohio-3206, ¶ 18.

{¶ 20} Alleged errors in the admission of evidence, as argued in the second and third assignments of error, are based on evidentiary rulings made during trial

and could have been raised on direct appeal. Similarly, Lenhart could have argued that his trial counsel was ineffective for failing to investigate and preserve biological material in his direct appeal wherein he argued his trial counsel was ineffective for failing to object to certain evidence and for failing to introduce evidence of the victim's history of drug arrests. *See Lenhart I*, 8th Dist. Cuyahoga No. 74332, 1999 Ohio App. LEXIS 3379 at 25-26 (July 22, 1999). Because these arguments could have been raised on direct appeal, they are barred by res judicata.

{¶ 21} Although Lenhart could have challenged the legality of his sentence on direct appeal, he did not, and he has now completed service of his sentence. "Any appeal of a sentence already served is moot." *State v. Bostic*, 8th Dist. Cuyahoga No. 84842, 2005-Ohio-2184, ¶ 21. Thus, regardless of the fact that any challenge to Lenhart's sentence is barred by res judicata, the challenge is now also moot. *Id.*

{¶ 22} Therefore, the second, third, fourth, and fifth assignments of error are overruled as barred by res judicata and because the fifth assignment of error is moot.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27
of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, A.J., and
MARY J. BOYLE, J., CONCUR